O’CONNELL, Justice.
We have for review by certiorari an order of the Florida Industrial Commission affirming two orders of the deputy commissioner, one awarding compensation and the other providing that, if claimant prevailed on appeal, the respondent employer would be liable for the cost borne by the commission in providing a transcript of the hearing for the indigent claimant.
Petitioner, the claimant, suffered a com-pensable injury to his low back on April 5, 1963 while employed as a garbage collector by the respondent. It was stipulated that claimant’s average weekly' wage from this employment was $62.25. However, he had concurrent, though seasonal, earnings of $75 to $100 per week from self-employment as a car and boat washer and yardman. Respondent, the City, voluntarily paid for temporary total disability, medical treatment, including spinal fusion, and permanent partial benefits for 10 per cent disability of the body as a whole. On July 25, 1963, claimant filed claim for additional permanent disability benefits.
*328 The deputy ruled that claimant’s concurrent employments were too dissimilar to be combined for the purpose of computing average weekly wage and rate of compensation. However, in concluding that claimant had sustained no more than a IS per cent loss of wage earning capacity, the deputy considered the factor, inter alia, that claimant was able to continue his self-employment activities as car and boat washer and yardman, although he could not continue to do the lifting required by his employment as garbage collector.
After claimant filed an application for review by the full commission, he was informed by the deputy that the cost deposit for preparing the transcript of proceedings would be approximately $235. Claimant thereupon filed an affidavit of insolvency and a petition to be relieved of such costs. After hearing, the deputy entered an order relieving claimant of such costs, but further providing that in the event he was successful “on appeal,” respondent City would then be required to reimburse the commission for the amount of costs borne by it on behalf of the claimant. The City cross-petitioned for review of this order to the full commission.
The full commission affirmed both of the deputy’s orders. The claimant seeks review of the compensation order, and the City has cross-petitioned seeking quashal of the order relating to the cost of the transcript used on appeal.
In his petition, claimant contends, alternatively, (1) that his two employments were not so dissimilar as to prevent combination of earnings from both in computing his average weekly wage; or (2) that if earnings from such concurrent employment were to be excluded in the computation of average weekly wage, they should also be excluded in determination of his post-injury earning capacity and loss of wage earning capacity, i. e., disability, resulting from the injury.
We have previously dealt with several facets of the problem of concurrent dissimilar employment, but we have not dealt directly with the question presented here. In J. J. Murphy & Son, Inc. v. Gibbs, Fla. 1962, 137 So.2d 553, we held that earnings from a concurrent but dissimilar employment could not be combined with the earnings from the injury-producing employment for the purpose of computing the average weekly wage. In Jaquette Motor Co. v. Talley, Fla. 1961, 134 So.2d 238, we held that earnings from such employments could not be combined for this purpose when the concurrent employment was one expressly excluded from coverage of the statute (employment by a railroad). In Wilson v. City of Haines City, Fla.App.1957, 97 So.2d 208, the District Court of Appeal, Second District, held that earnings from concurrent self-employment as a private contractor could not be combined with earnings from the injury-producing employment' in computing the claimant’s average weekly wage. We can therefore answer claimant’s first alternative contention by saying that under the facts of this case this claimant’s earnings from his concurrent employment were properly excluded in determining average weekly wage because they were obtained from self-employment as a private contractor. In Board of County Commissioners v. Alman, Fla. 1963, 156 So.2d 850, the question presented was similar to but not the same as the one now before us.
The question now squarely presented to us is this: Whether earnings from concurrent employment engaged in by a claimant both prior to and after an injury, but properly excluded from computation of the average weekly wage, i. e., pre-injury earning capacity, may nevertheless be considered in determination of post-recovery earning capacity and loss of wage earning capacity.
There are three possible holdings that may be given in answer to this question. The first would be to answer in the affirmative by holding that earnings from the *329 concurrent employment may be considered in determining post-recovery earning capacity, even though earnings from the same employment were properly excluded in computing the average weekly wage, i. e., pre-injury earning capacity. But this answer is obviously unfair to the injured employee and benefits the employer in a manner not intended by the statute. We decline to adopt such a holding for the reasons given below.
When a claimant has no concurrent employment, or when such concurrent employment is similar and included in computation of the average weekly wage, the average weekly wage is a fair measure of wage earning capacity at the time of the injury. Furthermore, in such cases loss of wage earning capacity, i. e., disability, is fairly measured by the difference between the average weekly wage and the post-recovery ability to “ * * * earn in the same or any other employment the wages which the employee was receiving at the time of the injury.” F.S. Sec. 440.02(9), F.S.A.
But in cases in which earnings from concurrent employment are not included in the computation of average weekly wage such wage is not representative of pre-injury earning capacity. Moreover, to determine loss of wage earning capacity by comparing the average weekly wage, from which earnings from concurrent employment have been excluded, with post-recovery earning capacity, in which earnings from the same concurrent employment are included, obviously produces an unfair result. It does not fairly compensate the employee for loss of wage earning capacity which the statute is designed to do. Moreover, as the Michigan court said in Bowles v. James Lumber Co., 1965, 345 Mich. 292, 75 N.W. 2d 822, at 823-824:
“If defendant [employer’s] liability for compensation may not be increased by taking into consideration what plaintiff was earning on another job at time of injury, it follows, as a matter of logic and justice, that it may not be decreased by taking into account what he continued to earn on that other job after injury.”
The second answer which might be given to the question before us would be to hold that earnings from concurrent dissimilar or otherwise excluded employment should be' considered in arriving at post-recovery as well as pre-injury earning capacity, but not in determining the average weekly wage. This rule would accomplish a fair result to a claimant, but it would ignore the clear provisions of the statute excluding certain employment from its coverage. It would also run afoul of our decisions holding that average weekly wage is, for purpose of the statute, an employee’s pre-injury earning capacity. Board of County Commissioners v. Alman, Fla. 1963, 156 So.2d 850.
We come then to the third possible answer to the question and the one we adopt. It is this: If earnings from concurrent employment, engaged in by claimant at the time of the injury, are excluded from de- , termination of the average weekly wage, i. e., pre-injury earning capacity, earnings. from that same employment should also be excluded from the determination of post-recovery earning capacity. This statement is subject, however, to the proviso that to the extent that the claimant, after injury, enlarges his participation in the concurrent employment as a substitute for the employment in which he was injured, then such enlarged participation may be considered in determining post-recovery earning capactiy.
Stated another way, the rule we adopt herein is that actual post-injury earnings in employment other than that in which the injury occurred are to be considered in determining loss of wage earning capacity only: (1) when earnings from the same employment were included in the computation of average weekly wages at the time of the accident; or (2) when such post-injury employment is found to have been enlarged or resorted to by the claimant as a substitute for the loss of earning *330 capacity in the injury-producing employment. In other words, we construe the words “any other employment” contained in Sec. 440.02(9) to mean any employment other than one in which the claimant was concurrently engaged at the time of the injury and which was not included in the computation of average weekly wage.
The rule we adopt is not intended to immunize all post-injury earnings from a concurrent dissimilar or otherwise excluded employment from consideration in determining post-recovery earning capacity and loss of wage earning capacity. Rather, it removes from such consideration only that part of the earnings from such employment as were being received at the time of the injury, but not included in the computation of the pre-injury earning capacity. A deputy might well determine that a claimant has an earning capacity in the dissimilar employment which can be enlarged to fill completely the void caused by the loss of capacity to earn in the injury-causing employment. The deputy will still have to use his best judgment in determining a claimant’s future earning capacity, and any capacity to perform on the part of the claimant is relevant in forming this judgment.
The rule we have adopted here is supported by Brandfon v. Beacon Theatre Corporation, 1949, 300 N.Y. 111, 89 N.E.2d 617. Following that decision of the New York court construing a statute from which ours was borrowed, Michigan, Arizona, and Connecticut have ruled the same as we do. See Bowles v. James Lumber Co., 1965, 345 Mich. 292, 75 N.W.2d 822; Sanchez v. Industrial Commission, 1964, 96 Ariz. 19, 391 P.2d 579; and Emerick v. Monaco and Sons Motor Sales, 1958, 145 Conn. 101, 139 A.2d 156.
The rule is fair to the employee because it excludes from determination of post-recovery earning capacity any earning capacity that was excluded from determination of pre-injury earning capacity. It is fair to the employer because it does not require him to pay compensation based upon earnings from concurrent employment that is dissimilar to his or that is excluded from coverage under the statute.
In the instant case the deputy found the claimant had suffered a 15% permanent partial disability of the body. He refused to combine the earnings from claimant’s self-employment ventures in determining average weekly wage; yet he specifically stated that he considered claimant’s ability to earn in those employments in determining claimant’s loss of wage earning capacity. Under the rule announced in this opinion, the deputy, in determining loss of wage earning capacity, had the duty to consider claimant’s capacity to earn as yardman and car and boat washer, but only to the extent that earnings from such employments were found to have been enlarged or were capable of being enlarged or extended to replace claimant’s earnings as a garbage man. We are unable to tell from the deputy’s order whether he considered the capacity to earn in this fashion, or merely considered that the post-recoveiy earnings from the self-employment ventures could simply be balanced against claimant’s pre-injury earnings as a garbage man, as we have said should not be done. On remand he should make clear findings illustrating that he applied the rule we announce herein. The fact that deputy did not make findings that would show compliance with the rule adopted herein cannot be counted as an error against him. He could not be expected to observe a rule not yet announced.
This opinion, and remand of this cause to the deputy, does not necessarily mean that the claimant is entitled to more than 15% disability. The deputy did not specifically find that claimant could no longer perform the work of a garbage man, although the order suggests this. However, in the order the deputy makes reference to the claimant’s ability and experience in picking up and delivering cars for auto dealers, and an employment expert testified that in jobs he could do claimant could *331 expect to earn 85‡ to $1.25 per hour. On reconsideration and proper findings the •deputy may still determine that the claimant has suffered only a 15% disability.
We turn now to the question raised by ■ the City in its cross-petition, which is whether the commission has the power to order an employer to pay the cost of a transcript furnished to an indigent claimant by the commission, in event the claimant prevails on appeal.
We find no statutory authority empowering the commission to charge the cost of a transcript against a losing party. The commission is authorized to tax other costs. Sections 440.32; 440.34(2). Thus, the principle of expressio unkis est exclu-sio alterius precludes any finding of an implied authority to do what the commission did here. Moreover, the commission itself apparently has not heretofore taxed costs, except those specifically authorized in the statute indicating that until now it has construed the statute as neither requiring nor authorizing it to tax such costs against a losing party. The order taxing costs must also be quashed.
For the reasons above expressed the petition and cross-petition are both granted, the order of the full commission is quashed, and the cause remanded for further proceedings.
It is so ordered.
THORNAL, C. J., ERVIN, J., and KANNER, District Court Judge (Retired), concur.
CALDWELL, J., dissents with opinion.